No. 20,178.

EVENS & HOWARD FIRE BRICK COMPANY, *Appellant*, v. FRED
TARRY and ELDRED TARRY, Partners, etc., revived in the
name of MARY A. TARRY, as Administratrix, etc., et al.,
*Appellees*.

SYLLABUS BY THE COURT.

1. SALE — *Sewer Pipe* — *Sold "Subject to Inspection" — No Warranty.*
Where the facts and correspondence show that a sale of sewer pipe
was made "subject to inspection of engineer," and clearly show that
there was no warranty, a finding that the sewer pipe was sold with an
oral and written warranty that the articles would pass inspection can
not be sustained.

2. SAME—*Damages.* Where goods are sold subject to inspection, the ven-
dor is not liable for damages occasioned to the vendee because such
goods do not meet with approval on inspection.

3. SAME—*Sewer Pipe—Sold "Subject to Inspection"—Elements of Dam-
ages.* Where sewer pipe is sold subject to inspection, and part of it
is approved on inspection, and part of it which was disapproved on in-
spection is used by the vendee elsewhere, and part of it is sold and the
remainder is retained by the vendee, the approved pipe must be paid
for at the agreed purchase price, the pipe used elsewhere must likewise
be paid for after deducting a reasonable charge for its transportation
to the place where it was used, the pipe sold by vendee must be ac-
counted for, and the remaining pipe retained by the vendee must be
paid for at what it is reasonably worth.

Appeal from Leavenworth district court; JAMES H. WEN-
DORFF, judge. Opinion filed May 6, 1916. Reversed.

*A. E. Dempsey*, of Leavenworth, for the appellant.

*William W. Hooper*, and *David W. Flynn*, both of Leaven-
worth, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff sued the defendants for the value
of four carloads of sewer pipe. The defendants answered
alleging that they had been awarded a contract to construct a
storm sewer on the Fort Leavenworth military reservation;
that the plaintiff's agent was present at the letting of the con-
tract and knew the government specifications, and that this
agent solicited defendants' order and offered to ship sewer
pipe which would comply therewith and pass government in-

spection; that defendants, relying upon this assurance, sent an order for pipe, directing the shipment of one carload, but that the four carloads were forwarded in disregard of that order; that the sewer pipe so shipped was of inferior quality and did not comply with the government requirements, and that the defendants, not knowing this, hauled the pipe and laid it along side the sewer ditch, where it was inspected and rejected and that the government officials ordered it removed from the federal premises; that the defendants notified the plaintiff of the rejection of the pipe, and that the plaintiff directed the defendants to hold the pipe until further order of the plaintiff, and that the plaintiff would make arrangements to remove it from the reservation. Defendants also alleged that they were compelled to purchase sewer pipe elsewhere, and not hearing further from plaintiff they were compelled by the government officials to remove the pipe at great expense, and that they stored it in Leavenworth city; that the pipe furnished by plaintiff was defective, "and very little of it was of any value for any purpose," and that "they have been unable to use same, and that the same thereof and the whole thereof is of no value whatsoever." Defendants further pleaded that by the failure of plaintiff to furnish sewer pipe in compliance with the specifications and order, as plaintiff "had agreed to do," the defendants were damaged in specified particulars, aggregating $562.30, for which sum defendants asked judgment.

Plaintiff's reply denied that its agent submitted prices for sewer pipe; denied the making of guaranties; denied that he saw the government specifications or knew their contents; denied the receipt of an order for one carload of pipe with directions to hold the remainder until it would be determined if the government would approve the pipe, but averred that on July 22, 1911, the defendants sent a written order to ship four cars of sewer pipe as quickly as possible, and on July 25 the defendants sent another written order asking that the eighteen-inch pipe be shipped first and the balance to follow down the line of sizes without any condition or restriction as to the time of loading or shipping. Plaintiff also denied any notification that all the pipe was rejected by the government, and alleged that most of it had been used and accepted by the government and that the defendants stated that they could and

would use the balance elsewhere and that they did use a large amount of the sewer pipe elsewhere. Plaintiff also denied receipt of notification that the government had ordered defendants to remove all of the sewer pipe, and alleged that such pipe as was hauled away was done at defendants' own instance, and denied that it had given directions to hold the sewer pipe until further order or that plaintiff agreed to have the pipe removed from the reservation.

At the trial defendants stated that they were not seeking a rescission of the contract, but grounded their action upon damages sustained by breach of warranty and upon special damages because the goods sold to them were for a specific and guaranteed purpose.

The jury gave a general verdict for defendants and assessed their damages at $358.50. Special questions were answered thus:

"If the jury find the defendants entitled to recover any special damages herein, they will answer the following questions and each of them:

"(1) If you find there was a warranty of the sewer pipe in question, state when the warranty was made and whether verbally or in writing? Answer. Verbally and writing.

"(2) Was the condemned sewer pipe in question of any value? Answer. No.

"(3) Did the defendants take any precaution to lessen the damages which they intended to claim against the plaintiff? Answer. Yes.

"(4) Did the defendants make any claim of damages at or about the time of the alleged breach of warranty? Answer. No.

"(5) Did the defendants use any part of the sewer pipe in question in their government contract, and if so what sizes and how much of each? Answer. Yes, 45 ft. 18", 600 ft. 8", 200 ft. 10".

"(6) Did the defendants claim the right to hold the sewer pipe or any part thereof until payment of their claim for damages? Answer. Yes.

"(7) What, if anything, do you allow the defendants for demurrage? Answer. $8.00.

"(8) What, if anything, do you allow the defendants for labor in unloading cars? Answer. $9.00.

"(9) What amount, if any, do you allow defendants for hauling pipe to sewer ditch? Answer. $16.00.

"(10) What amount, if any, do you allow defendants for hauling pipe off the sewer site? Answer. $24.00.

"(11) What amount, if any, do you allow defendants for foreman in keeping sewer ditch open? Answer. $50.00.

"(12) What amount, if any, do you allow defendants for other help than the foreman in keeping sewer ditch open? Answer. $120.00.

"(13) What amount, if any, do you allow defendants for penalty paid to the United States Government? Answer. $73.00.

"(14) What amount, if any, do you allow defendants for hauling sewer pipe off the military reservation? Answer. $86.00.

"(15) Do you find the market price at Ft. Leavenworth, Kansas, of the rejected sewer pipe in question to be as invoiced to the defendants? Answer. No.

"(16) If you answer question No. 15 in the negative, then state what was the market price of the pipe? Answer. No evidence to show."

Plaintiff assigns errors which will be considered in order.

1. To support the finding of warranty, one of the defendants testified that at the time of the letting of the contract the plaintiff's agent solicited defendants for an order and guaranteed that its sewer pipe would satisfy the government's demands, and the subsequent correspondence between the parties amounted to a written ratification of the oral warranty. This is far from correct. The same defendant testified that he thought the plaintiff's agent represented "the Athens people," a different firm, and he wrote them, giving an order which was not filled. Then he tried to get the order filled by a "Mr. Dickey," who represented a Kansas City firm. It was only after repeated failures to procure pipe from others, and after some weeks had elapsed, that he opened negotiations with plaintiff for sewer pipe. In such situation, if plaintiff's agent did offer to guarantee the quality of its sewer pipe at the time of the letting, such offer was not accepted and there was no oral warranty. Neither does the correspondence justify the finding of a written warranty, or the ratification of a prior oral warranty. The federal contract was let in May, 1911. On June 3 plaintiff wrote to defendants:

"We presume that you will be awarded this work and as stated to you, we are in a position to quote you some very attractive prices on pipe."

To this defendants made no answer, but on July 6 plaintiff wrote to defendants, saying that their letter to the Athens Fire Brick Company had been referred to plaintiff. Plaintiff in this letter quoted prices on sewer pipe, saying:

"These prices in minimum carloads 26,000 pounds f. o. b. our works, freight only allowed to Ft. Leavenworth, and are also subject to inspection of engineer. Breakage in transit, if any, at purchaser's risk.

"We have large stocks of straight pipe and fittings on these sizes as shown in catalogue enclosed, and can start shipping car immediately, and complete quantity required as fast as we can secure empty equipment."

## On July 12 defendants answered:

"We received your 'favor of July 6th, Saturday with quotations on sewer pipe on our contract at Ft. Leavenworth, Kansas, which came too late to do us any good. We have looked all through our letter files and fail to find any previous letter with prices from you. We waited two weeks to hear from you and finally wrote to Texas for prices, we took it for granted that you had framed up a deal with W. S. Dickey. You certainly would have had the order if it had come a week sooner. The captain wanted us to start the work the 1st of July and that hurried us or we would have waited to hear from Athens, Texas, first. Can say if we have any more sewer pipe to buy we will get your prices before buying."

## On July 15 defendants wrote:

"Could you commence to ship immediately on the sizes including the 18" to the 6" and the 24" and 21" that I may be short of—you have the number of feet in the specifications I sent.

"I have only placed the order for the 24 and 21" do not see any reason why the order cannot be divided especially when we can save a little money.

"Hoping to hear from you by return mail, I remain."

## On July 18 plaintiff wrote:

"Have your favor of the fifteenth inst. in reference to the requirements of pipe from Ft. Leavenworth. If you place order with us immediately for your present requirements, we can start shipments at once and complete as fast as pipe is required.

"The prices quoted in our letter of July 6th are subject to change without notice and as there has been a tendency in the market to advance, we hope you can give us this order by return mail so that we can start shipments at once."

## On July 20 defendants wrote:

"Your favor of July the 18th received. You can commence shipment on the 18", 15" and 12" pipe and I want the fittings in the first car but have not the plans here so will write you to-morrow, telling you the fittings I want in the first car."

## On July 21 defendants wrote:

"In the first car of pipe would like to have:
     "3 lengths of 24" pipe
      3 lengths of 21" on 8" Y
      1 length of 18" on 8" Y
      7 lengths of 15" on 8" Y
      4 lengths of 12" on 8" Y
      3 lengths of 10" on 8" Y
      2 lengths of 15 1/16 bends."

On July 22 plaintiff replied:

"We have entered your order for your requirements of Standard No. 1 pipe for Ft. Leavenworth as per attached copy which we wish you would check over and if there are any changes to be made advise us immediately so no mistake will be made in order.

"We have taken these quantities from correspondence but possibly you may desire to make some change. We will start shipment at once and complete as fast as we can secure empty equipment."

This correspondence shows that whatever plaintiff's agent told defendants at the letting of the contract in May did not become the basis of a contract. It shows that only after defendants' failure to get their orders filled elsewhere did they enter into a contract with plaintiff. And by no fair interpretation can these letters be read to import a warranty that the sewer pipe would pass government inspection. On the contrary, one letter expressly says that the pipe is priced and sold f. o. b., breakage at consignees' risk, freight to be advanced by consignees, and subject to inspection by the government's engineer. If it did not pass such inspection, there would be no sale. It must be held therefore that the question of warranties, either oral or written, is not in this transaction.

2. Part of the sewer pipe did pass government inspection and was used in the work. It is clear that the defendants are liable for the purchase price of the pipe so used. As to the remainder, when the defendants notified the plaintiff that the government had inspected and condemned much of the pipe, plaintiff on August 26 replied:

"We shall be unable to furnish anything better, so wish you would kindly just hold it there subject to our order. We will have arrangements made to remove it at once, and dispose of it at Leavenworth or elsewhere to the best possible advantage, unless you have some suggestion to make for handling it in a different way."

Defendants answered:

"Your favor of August 26th received. Would say in reply that we expect to use all the shipment of pipe below the 15″ and perhaps most of them—have made arrangement to buy the 18″ pipe and will resume work as soon as they come—think will be able to pile your pipe off to one side until we are through the sewer and then see how many are left and can tell better what to do with them. Am working on that 8″ sewer in town while waiting had no trouble with the pipe in the city it made a 2½-mile haul for me though."

On August 4 defendants wrote:

"    .  .  .   in regard to the rejected pipe and fittings—we secured a small contract from the city last night for a sewer will hold that order back until we find out what lacking at the Fort. The cars came to-day they look to be in fine shape. Will commence to unload to-morrow—will let you know how they stack up."

How much of the sewer pipe rejected by the government was used by defendants in the city sewer is not clear. Whatever the amount was should be paid for by defendants, although it would be fair and just to make defendants a reasonable deduction for hauling that pipe from the place where it was rejected to the place where it was used—"a 2½-mile haul."

It seems that defendants sold $17 worth of pipe. If so, that too must be accounted for. As to the pipe still on hand, it belongs to defendants, since their cross-action was for damages and not for rescission. They must pay what it is reasonably worth, but the evidence seems to show that it had no value, and this is the finding of the jury, although that finding is not controlling on that portion of the rejected pipe which was used in the city sewer, nor on the $17 worth which was sold to a third party.

3. Touching the specific items of damage allowed by the jury, it seems clear from the correspondence that plaintiff was within its privilege, and indeed within its instructions from defendants, in forwarding the entire shipment promptly, and it ought not to be charged with the demurrage. Neither should it be charged with the expense of hauling the sewer pipe to the sewer site nor away from it, except the deduction for hauling the pipe used in the city sewer, as we have suggested above. The charges for employing a foreman and others to keep the sewer ditch open can not be set up against the plaintiff. Neither can the penalty paid to the government. The plaintiff was not responsible for the delay, and the defendants' own testimony showed that it was occasioned, in part at least, while they were still dealing with other firms.

"Q. Why didn't you wait until they tested it before you put the pipe in the ditch?   A. Well, we were pushing the work, I wanted to push it.

"Q. You thought it was all right?   A. Yes.

"Q. You took your own judgment?   A. Yes; we thought it was right.

Brick Co. v. Tarry.

"Q. Now, then you want to charge the Evens & Howard people for your mistake?   A.   (No answer.)

*   *   *   *   *   *   *   *   *   *

"Q. As a matter of fact you did order 18" from Dickey and he could not fill the order?   A.   (No response.)

"Q. The Court:   Did you mean before or after he gave the order to the plaintiff here?

"Mr. Dempsey:  I want to find out whether he did not before he gave the order to Evens & Howard.

" (Addressing witness):  I will ask you, Mr. Tarry, if prior to the time of your placing that order with Evens & Howard you did not order 18" pipe from The Dickey Clay Manufacturing Company and they were not able to fill the entire order and you had to order some 18" of the Evens & Howard people?   A.   May I explain that?

"Q. Answer yes or no.   A.   No; I furnished Mr. Taft them specifications, you understand—

"Q. Who is Mr. Taft?   A.   Mr. Taft represents the Dickey Clay Pipe Company and he was to ship the pipe as ordered.

"Q. Including 18"?   A.   No; whatever the order was; for the 21 and 24" and if we needed 18" we were to order—we will order 18" as we need it.

"Q. You had at that time made no arrangements with the Evens & Howard people?   A.   No.

"Q. Now then you went ahead and dug the ditch right after placing the order with Mr. Taft?   A.   Yes.

"Q. And continued on?   A.   Right along.

"Q. And then later you ordered 18" pipe or what you could not get from Evens & Howard people?   A.   Yes, sir."

This evidence makes it clear that these items of damage can not be sustained.

Some other errors are assigned, but as a new trial must be ordered and they are not likely to arise again, they need not be discussed.

The judgment is reversed and the cause remanded for a new trial.